IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANASTASIA STEINKIRCHNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) 2:19-cv-01241 |
| BENJAMIN E. GORDON, | ) |
| ERIC M. HURWITZ, | ) |
| STRADLEY, RONON, STEVENS & | ) |
| YOUNG, LLP | ) |
| NAVIENT SOLUTIONS, LLC, | ) |
| | ) |
| Defendants. | ) |

## OPINION

**Mark. R. Hornak, Chief United States District Judge**

The Plaintiff, Anastasia Steinkirchner, proceeding *pro se*, filed a state court complaint against Navient Solutions, LLC ("Navient") in the Magisterial District Court for Allegheny County, Pennsylvania. (ECF No. 1-1, at 2.) Navient removed the action to this Court and then moved to dismiss. (ECF Nos. 1, 8.) The Plaintiff moved to amend her state court complaint, which the Court granted as a matter of course under Rule 15(a). (ECF Nos. 12, 15.) An Amended Complaint was filed, joining Navient's law firm and counsel of record as defendants. (ECF No. 16.) Navient and its law firm and counsel (collectively "the Defendants") moved to dismiss the Amended Complaint. (ECF No. 17.) The Plaintiff responded, the Defendants replied, and this matter became ripe for disposition. (ECF Nos. 20, 23.)

### I. STATEMENT OF THE FACTS

The Plaintiff's bare-bones state court complaint alleged violations of the Fair Debt Collections Practices Act ("FDCPA" or "the Act"), specifically 15 U.S.C. §§ 1692e, "False or misleading representations" and 1692f, "Unfair practices," and sought $12,000 in damages. (ECF

1

No. 1-1, at 3.) The facts set forth in the state court complaint read in their entirety, "Terms of 'collection activities' listed in affidavit and subsequent letters was violated. Phone calls persisted and constitutes harrassment [sic]." (*Id.*) In her otherwise extensive Amended Complaint, the Plaintiff presented no additional facts. (ECF No. 16, at 1.) Instead, the Plaintiff stated that because she is no longer limited to a "maximum dollar amount" in state court, she now seeks "$28,181.85 (including filing fees)." (*Id.*) The Plaintiff arrived at that number by "seeking $1,000 in damages for each and every [FDCPA] violation"[1] plus the filing fees she paid. (*Id.*) To support those violations, the Plaintiff incorporated by reference records of phone calls and voicemails attached as Exhibit A to her Motion for Leave to Amend. (ECF No. 12, at 4–32.)

From those records, the Court discerned these asserted facts. The Plaintiff received missed calls, voicemails, or both from phone numbers she attributes to Navient. (*Id.*) The Plaintiff claims there were twenty-eight (28) offending calls. (ECF No. 16, at 1.) For its part, the Court counts twenty-six (26) separate calls. (ECF No. 12, at 4–32.) The discrepancy might be that these records consist of screenshots from a cell phone. Some screenshots of missed calls have a corresponding screenshot of a voicemail from the same phone number and left at nearly the same date and time. The Plaintiff does not clarify where a certain voicemail corresponds to a certain phone call. The Court also found one duplicate among the screenshots.[2] Finally, there is also very little in the record about the actual content of the voicemails.[3]

---

[1] She claims twenty-eight violations. (ECF No. 16, at 1.)

[2] The Plaintiff received a July 3, 2019 call from a Springville, Utah phone number at 10:13a.m., which appears in two screenshots. (ECF No. 12, at 9, 28.)

[3] Some voicemail screenshots consist of emails sent to the Plaintiff that include automated transcriptions of the voicemails' content. (*See* ECF No. 12, at 15–16, 19.) Unfortunately, the transcriptions are so poor that they shed little light on the actual content. At most, one caller may have said she was calling the Plaintiff from "Navient," but it was transcribed as "Navia." (*Id.* at 19.)

The Plaintiff also incorporated by reference Exhibit B to her Motion for Leave to Amend, the state court complaint and the documents she originally included with that complaint. (*Id.* at 33–72.) The limited content of the state court complaint is discussed above. The attached documents include an "Affidavit of Legal Notice and Demand to Validate Debt Claim" ("the Affidavit"), a "Notary Certificate of Dishonor and Non-Response" ("the Certificate"), and a "Non-Negotiable Notice of Default Opportunity to Cure" ("the Notice").[4] (*Id.*)

These documents suggest that in March 2019 the Plaintiff wrote an Affidavit claiming to bind Navient to the Affidavit's terms if Navient failed to respond. (*Id.* at 37 ("SILENCE IS ACQUIESCENCE").) The Affidavit demanded that Navient "cease and desist" all collection activities "prior to validation of purported debt." (*Id.*) The Affidavit required Navient to produce a list of documents to verify this debt within thirty (30) days. (*Id.* at 38.)

In May 2019, the Plaintiff drafted, signed, and notarized the Certificate. (*Id.* at 40.) This document claimed to bind Navient legally for its failure to respond to the Plaintiff's Affidavit. (*Id.*) Further, it purportedly "dishonors" any claim of debt and associated costs or fees (*Id.*) The pagination suggests that attached to the Certificate was a letter. (*Id.* at 41.) The letter, dated the same day as the Certificate, gave Navient another ten days to provide documents and information proving the existence of a debt. (*Id.*) The letter also mentioned an account number. (*Id.*) Whether this number is an account the Plaintiff held with Navient or is unrelated, the record does not reveal.

The last document is the Notice. (*Id.* at 42.) The document is yet a third letter to Navient, dated around three weeks later, also in May 2019. (*Id.*) The letter included the same account number as the Certificate and recounted the previous correspondence the Plaintiff sent to Navient.

---

[4] Exhibit B also includes the same screenshots discussed above and a photocopy of a certified mail receipt. (*Id.* at 43–72.) Much of Exhibit B consists of high-sounding but completely irrelevant content regarding Federal Reserve Notes, notice to agents and principals, and references to the "Republic of Pennsylvania." (*Id.* at 37–39.)

(*Id.*) Noting Navient's failure to respond adequately (as defined by the Plaintiff), this letter purported to bind Navient to these terms:

> 1. That the debt did not exist in the first place; **OR**
> 2. It has already been paid in full; **AND**
> 3. That any damages I suffer, you will be held culpable;
> 4. That any negative remarks made, to a credit reference agency will be removed;
> 5. You will no longer pursue this matter any further. You have not proven any debt. If you sell the alleged liability, and/or appoint an agent to act on its/your behalf in this matter you will have broken our agreement and you agree to pay the following fee schedule $5,400 for dishonoring our binding agreement, plus $1000 per hour or part thereof for Authorized Representatives time nunc pro tunc, plus $1000 per recorded delivery or any other form of response nunc pro tunc. Also, **NO** further contact is now necessary, however, if you decide to contact me by phone or letter the fee is $100 per item payable in advance by cheque; if no payment is made in advance the fee will rise to $1000 per item and you will also be held culpable for any costs incurred while recovering the debt you owe.

(*Id.*) In essence, the Plaintiff has received multiple debt collection calls and she believes she successfully discharged her debt obligation by unilaterally sending these various letters and documents to Navient. The Plaintiff assumes that her correspondence is legally binding on Navient and so those documents are also the source of her damages calculation.[5]

## II. JURISDICTION

The Court has original jurisdiction under 28 U.S.C. § 1331 to decide this case. The Amended Complaint alleges claims under the FDCPA, and therefore the action arises under federal

---
[5] Upon reviewing these documents, it is clear what the Plaintiff meant in her state court complaint when she said, "[t]erms of 'collection activities' listed in affidavit and subsequent letters was violated." The Plaintiff believes that the terms in the documents she sent to Navient are somehow binding on Navient by dint of its nonresponse to them. Those terms were then supposedly "violated" when Navient continued to call the Plaintiff. As a result, the Plaintiff says that Navient must pay her $1,000 per call. (ECF No. 12, at 42.) That "fee" multiplied by the alleged number of calls (28) equals the damages the Plaintiff seeks, less the filing fee. Presumably, Navient never "paid for" those calls. Given the claims asserted, these documents are not relevant to whether the Plaintiff sufficiently alleges a violation of the FDCPA. While the Court is not in the business of issuing general advisory opinions, it can say with confidence that the Plaintiff's one-sided effort to discharge her debts does not create a legal or factual basis for the claims she struggles to assert.

law. All other requirements for removal are satisfied. The Magisterial District Court for Allegheny County rests within the Western District of Pennsylvania. 28 U.S.C. § 1441. The Defendants filed their Notice of Removal within thirty (30) days of receipt. 28 U.S.C. § 1446(b).

## III. LEGAL STANDARDS

### A. Rule 12(b)(6) Motions

The Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must "state a claim to relief that is plausible on its face" by providing facts which "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). When determining whether dismissal is appropriate, the Court must: "(1) identify[ ] the elements of the claim, (2) review[ ] the complaint to strike conclusory allegations, and then (3) look[ ] at the well-pleaded components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The Court should "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431 (3d Cir. 2017). "A Rule 12(b)(6) motion should be granted when it appears to a certainty that no relief can be granted under any set of facts which could be proved." *Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 350 (3d Cir. 2012).

### B. *Pro Se* Pleadings

The Plaintiff is proceeding *pro se*. As a result, the Court holds the Amended Complaint to a less stringent standard and the Court must liberally construe the Plaintiff's pleading. *Becker v. Comm'r*, 751 F.2d 146, 149 (3d Cir. 1984); *see also Carter v. Kane*, 717 F. App'x 105, 108 (3d

5

Cir. 2017) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (holding the same post-*Twombly* and *Iqbal*). That said, even "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV. DISCUSSION

The Court accepts the well-pleaded facts (such as they are) as true and views the case in the light most favorable to the Plaintiff. The Court thus presumes that Navient placed all the calls and voicemails evidenced. It presumes that the Plaintiff sent the documents discussed above to Navient, and that Navient failed to respond.[6] Still, the Court will grant the Defendants' Motion to Dismiss.

### A. Claims Against Navient's Law Firm and Counsel of Record

First, the claims against Benjamin E. Gordon, Eric M. Hurwitz, and Stradley, Ronon, Stevens & Young, LLP ("SRSY") are dismissed. In reviewing the Amended Complaint and incorporated filings, the Court finds that the Plaintiff fails to state any claim as to these defendants. Certain filings by the Plaintiff, which the Court either denied or struck as irrelevant, show that the Plaintiff joined Mr. Gordon and Mr. Hurwitz as defendants based on her belief that these attorneys cannot practice law or represent Navient.[7, 8] (*See* ECF Nos. 11, 13, 18, 24.) The Plaintiff apparently

---

[6] Navient provided documentation purportedly showing that it did respond to the Plaintiff's request for verification of the debt, even though it argues it did not have to. (ECF Nos. 23, at 4–5; 23-1; 23-2; 23-3.)

[7] Both lawyers for Navient are admitted to practice in the Commonwealth of Pennsylvania. Mr. Hurwitz is admitted to practice in this Court. The Court also admitted Mr. Gordon to appear and practice in this Court as counsel *pro hac vice* for Navient. (ECF Nos. 2, 3.)

[8] The Plaintiff advanced several unconvincing legal theories in her Motion to Strike, which the Court denied. (ECF No. 11.) For instance, the Plaintiff claimed that counsel could not practice law because the practice of law "CAN NOT be licensed by any state/State," rather the "practice of Law is AN OCCUPATION OF COMMON RIGHT!" (*Id.* at 1.) Yet despite her belief about the common right to practice law, she demands evidence of the attorneys' licenses to practice law, lest they come before the court "in violation of the 'Clean Hands Doctrine.'" (*Id.*) The Plaintiff asserted several dubious legal theories throughout the stricken documents as well. (ECF Nos. 13, 18, 24.) For example, she repeatedly claimed that counsel of record must provide their "Registration Statements" under the Foreign Agents Registration Act of 1938 ("FARA"). (*See, e.g.*, ECF No. 24, at 1.) FARA, of course, applies to agents of a foreign (as in "outside the United States") principal and aims to prevent clandestine dissemination of foreign political propaganda within the United States. *See* 22 U.S.C. § 611 *et seq.*; *Viereck v. United States*, 318 U.S. 236, 241 (1943). Having

6

joined SRSY based on the Plaintiff's belief that the law firm "is acting as a debt collector without a license, a bond and they are not registered under the [FDCPA]"—an assertion provided with no supporting facts. (ECF No. 11, at 1.) This allegation does not appear on the face of the complaint or in any incorporated documents. But even if it did, the allegation would be struck as a conclusory, legal statement. *Malleus*, 641 F.3d at 563. SRSY and Navient's counsel of record state that Navient retained them for legal representation. (ECF No. 17, at 1.) They were not involved in any underlying activity before their retention. (*Id.*) Given that none of the facts proffered by the Plaintiff assert FDCPA violations by SRSY or counsel of record, the claims against them are dismissed.[9] Leave to amend the complaint as to these defendants is also denied because they are not "debt collectors" or engaged in "debt collection activity," and thus not covered by the FDCPA as discussed below.

### B. FDCPA Claims Against Navient

To prevail on a claim under the FDCPA, a plaintiff must satisfy four elements: "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015). Viewed in the light most favorable to the Plaintiff, the Complaint adequately alleges the first and third elements, but she fails to plead the second and fourth elements.

*1. Element (1)— "Consumer"*

First, the term "consumer" is defined under the Act as "*any* natural person obligated or

---

stricken or denied these filings, the Court does not address them point-by-point. Instead, the Court refers to them to reflect what the Court believes was the Plaintiff's reasoning for joining these parties.

[9] The Court also ordered stricken the Plaintiff's repetitive further filings assailing the "foreign registration" (or lack thereof) of these lawyers, ECF Nos. 13, 18, 24, 25, 26, and for the same reasons will deny the apparent Motion for Reconsideration, ECF No. 27.

7

allegedly obligated to pay *any* debt." 15 U.S.C. § 1692a(3) (emphasis added). Navient does not dispute that the Plaintiff is a natural person who is allegedly obligated to pay any debt.

### 2. Element (3)— "Debt Collection"

The third element requires the Plaintiff to show that Navient's activity is "debt collection." The FDCPA regulates, but does not define, "debt collection." The Third Circuit has held the term encompasses "any conduct taken in connection with the collection of any debt" or "activity undertaken for the general purpose of inducing payment." *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 245 (3d Cir. 2014). Communications need not include an explicit demand for payment to be "debt collection" activity. *Id.* Covered activity could also consist of "communications that include discussions of the status of payment, offers of alternatives to default, and requests for financial information." *Id.* at 245–46. Thus, it could be said that most, if not all, calls from a debt collector would constitute "debt collection" activity. Debt collectors usually don't call just to say, "hi." Viewed in the light most favorable to the Plaintiff, the Court finds that there is a plausible showing that there is a debt in which Navient has some interest. The account number in the Plaintiff's letters to Navient, as well as by the calls and voicemails she received, show this to be the case.[10] Accepting the Plaintiff's claim that the calls and voicemails were from Navient, the Court finds that this element is also satisfactorily pleaded. Even so, the inquiry still hinges on Navient being a "debt collector" in the first place.

### 3. Element (2)— "Debt Collector"

In their Motion to Dismiss, the Defendants mainly challenge Navient's status as a "debt collector" as defined under the FDCPA. The Act generally defines a "debt collector" as "any

---

[10] The exhibits attached to the Defendants' Reply Brief—the promissory notes for the Plaintiff's federal student loans and her detailed payment history—also confirm this. (ECF Nos. 23-1, 23-2, 23-3.)

8

person (1) who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts (the principal purpose definition), or (2) who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another (the regularly collects definition)." *Barbato v. Greystone All., LLC*, 916 F.3d 260, 265 (3d Cir. 2019) (internal quotations omitted). The definition includes several exclusions, under which the Defendants say Navient falls.[11]

The Defendants argue that the FDCPA's definition of "debt collector" applies *only* to those who collect debts on behalf of others. (ECF No. 17-1, at 5.) The definition thus excludes creditors collecting on a debt that the creditor originated.[12] (*Id.*) The Defendants also argue that the FDCPA excepts loan servicing companies, like Navient, and assignees of student loan debt "so long as that debt was not in default at the time the debt was obtained." (*Id.* at 6.) The Defendants cite several opinions holding that loan servicing companies are not "debt collectors" under the FDCPA. (*Id.* (citing cases from the 2d Cir., 5th Cir., 6th Cir., C.D. Cal., D. Haw., E.D. Mich., D.N.J., and E.D. Pa.).) Navient itself was a defendant in several of those cases.[13] Thus, the Defendants argue that the Amended Complaint should be dismissed because Navient cannot be a debt collector as a matter of law. They further argue that if the Court dismisses the Amended Complaint, it should also deny leave to amend because no amendment could cure this deficiency. (*Id.* at 7.)

The cases the Defendants cited from this Circuit suggest that a key factual element in

---

[11] The most pertinent exclusion appears to be: "the term [debt collector] does not include . . . any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F).

[12] Navient does not claim to be a creditor, but this argument is a bit more nuanced in this Circuit. *See Barbato*, 916 F.3d at 266 (holding a "creditor" could also be a "debt collector" under the FDCPA).

[13] *Caione v. Navient Corp.*, No. 16-cv-806, 2016 WL 4432687 (D.N.J. Aug. 18, 2016); *Downridge v. Navient*, No. 16-cv-10327, 2016 WL 1594427 (E.D. Mich. Apr. 21, 2016); *Spyer v. Navient*, No. 15-cv-3814, 2016 WL 1046789 (D.N.J. Mar. 15, 2016); *Haysbert v. Navient Sols., Inc.*, No. 15-4144, 2016 WL 890297 (C.D. Cal. Mar. 8, 2016); *Levy-Tatum v. Navient*, No. 15-cv-3794, 2016 WL 75231 (E.D. Pa. Jan. 7, 2016).

determining whether a defendant is a covered "debt collector" or an uncovered loan servicer is whether the debt was in default when that defendant acquired it. In *Levy-Tatum v. Navient and Sallie Mae Bank*, the court focused on the debt collector exclusion under 15 U.S.C. § 1692a(6)(F)(iii). No. CV 15-3794, 2016 WL 75231, at *6 (E.D. Pa. Jan. 7, 2016). That subparagraph excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." *Id.* Because Navient had "maintained responsibility for servicing the loan from its inception" and before it defaulted, the complaint in *Levy-Tatum* failed to establish Navient was a debt collector. *Id.* at *7. As a result, the exclusion in § 1692a(6)(F)(iii) applied and the claim was dismissed. *Id. See also Spyer v. Navient Sols., Inc.*, No. 15-3814, 2016 WL 1046789, at *3 (D.N.J. Mar. 15, 2016) ("Navient is not a 'debt collector' under the FDCPA under these circumstances because it became the loan servicer . . . while plaintiff's loan were not in default."); *Caione v. Navient Corp.*, No. CV 16-0806, 2016 WL 4432687 (D.N.J. Aug. 18, 2016) (holding the same).

After the Defendants here moved to dismiss, the Court specifically ordered the Plaintiff to address the arguments in the Defendants' Motion. (ECF No. 19.) The Court felt that this was necessary after the Plaintiff filed only a "Non-Negotiable Notice of Default Opportunity to Cure," which raised secondary and separate issues and was nonresponsive to the Motion to Dismiss. (*See* ECF No. 18.) Yet despite the Court's clear direction, the Plaintiff did not address the Defendants' arguments in her Response. (ECF No. 20.) Instead, the Plaintiff stated "[m]y original Complaint was clear in its statement and documentation as is the Amended Complaint." (*Id.* at 2.) She also rested on her previous arguments that Navient failed to validate the debt and that her

correspondence to Navient had somehow discharged her debt.[14] (*Id.* at 1.) The Plaintiff therefore still offers no facts showing that Navient is a "debt collector," even after pleading, then amending, and then ignoring this Court's specific direction that she do so. Even accepting all factual allegations as true and viewing the Amended Complaint in the light most favorable to the Plaintiff, she still fails to state a claim. As a result, her Amended Complaint will be dismissed. The Court will not grant the Plaintiff leave to further amend, given that she had two (2) chances to do so, and ignored the Court's directions the second time around. The Court concludes therefore that she cannot do so, and any such effort would therefore be futile. *See Kline v. Elite Med. Labs., Inc.*, No. 1:19-CV-1043, 2019 WL 6828590, at *6 (M.D. Pa. Dec. 13, 2019) ("Because Plaintiff has already amended his complaint . . . and that amendment has failed to cure [the] defect, I find that granting further leave to amend would be both inequitable to require Defendant . . . to seek dismissal a third time, and futile because even after being placed on notice of this issue Plaintiff has failed to allege enough facts").

### 4. *Element (4)— FDCPA Violation*

The Plaintiff lists two causes of action against Navient—15 U.S.C. §§ 1692e and 1692f. The first statute prohibits a "debt collector" from using false, deceptive, or misleading representations or means" in collecting a debt. 15 U.S.C. § 1692e. It also enumerates sixteen (16) potential violations. *Id.* The latter statute prohibits unfair or unconscionable means to collect or attempt to collect a debt and lists eight (8) potential violations. *Id.* § 1692f. At most, the Plaintiff has pleaded that she received more than two dozen phone calls from Navient, which she regards as harassment. (ECF No. 12, at 34.) Even if the Plaintiff *had* shown Navient is a "debt collector,"

---

[14] For these reasons, the Defendants ask this Court to consider the arguments unopposed and to grant their Motion. (ECF No. 23, at 2.) The Court declines to do so on this basis. *See Jones v. Unemployment Comp. Bd. of Review*, 381 F. App'x 187, 189 (3d Cir. 2010) (expressing disfavor for a 12(b)(6) dismissal because an argument is unopposed).

11

these facts would not state a claim. The Plaintiff sometimes received two or three calls per day. (*Id.* at 10, 21, 23.) But all the calls she documented took place over a span of five (5) months. (*Id.* at 4–32.); *see Despot v. Allied Interstate, Inc.*, No. CV 15-15, 2016 WL 4593756, at *6 (W.D. Pa. Sept. 2, 2016) ("Plaintiff has not pled any facts from which the Court can rightly infer that the phone calls were made with the intent to harass or annoy. The frequency of the calls does not suggest such behavior because the calls occurred over twenty days for an average frequency of less than one call per day.") The Plaintiff also received these calls between 9:00a.m. and 6:30p.m. (ECF No. 12, at 4–32.); *see Lightfoot v. Healthcare Revenue Recovery Grp., LLC*, No. CIV 14-6791, 2015 WL 1103441, at *2 (D.N.J. Mar. 11, 2015) ("there is ample case law requiring plaintiffs to plead that the challenged communication(s) occurred after 9 p.m. or before 8 a.m."). Thus, even accepting all the facts as true, the Plaintiff has not provided enough detail to support her claims. The Court would dismiss the Amended Complaint on this basis as well.

## V. **CONCLUSION**

For the reasons set out in this Opinion, the Defendants' Motion to Dismiss (ECF No. 17) will be GRANTED. The claims against Navient, Mr. Hurwitz, Mr. Gordon, and SRSY will be DISMISSED with prejudice. Leave to amend those claims is also denied as futile. *See Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). The Plaintiff's Motion for Reconsideration (ECF No. 27) is also DENIED.

An appropriate Order will follow.

Mark R. Hornak
Chief United States District Judge

Dated: February 4, 2020

cc:   All counsel of record